# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | **01 C 2467** | **DATE** | MAY 22 , 2003 |
| **CASE TITLE** | **YOON JA KIM v. CONAGRA FOODS, INC., etc.** | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for June 11, 2003 at 11:00 a.m.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment [48] is granted in part and denied in part. Any claim for direct infringement under 35 U.S.C. § 271(a) is dismissed.

(11) ■ [For further detail see Memorandum Opinion and Order attached to this minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

5
number of notices

MAY 23 2003
date docketed

date mailed notice

Document Number

93

CW courtroom deputy's initials

FD-7 FILED FOR DOCKETING
03 MAY 22 PM 4:49

Date/time received in central Clerk's Office
U.S. DISTRICT COURT

mqm
mailing initials

5/22/2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

MAY 2 3 2003

YOON JA KIM,                        )
                                    )
              Plaintiff,            )
              Counterdefendant,     )
                                    )
      v.                            )   No. 01 C 2467
                                    )
CONAGRA FOODS, INC., a Nebraska     )
corporation,                        )
                                    )
              Defendant,            )
              Counterclaimant.      )


## MEMORANDUM OPINION AND ORDER


     Plaintiff Yoon Ja Kim is the holder of U.S. Patent No.
Re. 36,355 (the "'355 Patent"), which issued on October 26, 1999
as a reissue of U.S. Patent No. 5,510,129 (the "'129 Patent").
The '355 Patent is a patent for a potassium bromate replacer
composition.  Potassium bromate is an oxidizing agent for bread
dough, but its use became less common after it was discovered to
have caused cancer in laboratory animals.  Plaintiff's
composition is to be used as a substitute for potassium bromate.
Plaintiff alleges that defendant ConAgra Foods, Inc. infringes
her patent by using the composition in producing certain types of
Healthy Choice brand breads, specifically Natural Wheat, Seven-
Grain, and Whole Grain.  She contends the bread mixes used in



producing these breads violate the patent.[1]  Defendant has

counterclaimed for a declaration that the '355 patent is invalid

and/or that defendant has not infringed the '355 patent.

Presently pending is defendant's motion for summary judgment.[2]

On a motion for summary judgment,[3] the entire record is

considered with all reasonable inferences drawn in favor of the

nonmovant and all factual disputes resolved in favor of the

nonmovant.[4]  Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471

---

[1]In today's opinion, the term "accused breads" will be
used generically to refer to these three types of bread in any
form, whether a finished product, a formula for producing the
bread, the dough form of the bread, or a bread mix.

[2]Previously, defendant's separate motion for judgment
based on collateral estoppel was granted.  See Kim v. ConAgra
Foods, Inc., 2003 WL 1193322 (N.D. Ill. March 13, 2003)
("ConAgra I").  However, shortly before the entry of judgment,
the underlying case that was the basis for collateral estoppel
had been reversed by an unpublished order of the Federal Circuit.
See Kim v. The Earthgrains Co., 2003 WL 731737 (Fed. Cir.
March 4, 2003).  Therefore, the case sub judice was reinstated
and defendant's separate summary judgment motion is now being
considered.

[3]In this patent case which is appealable to the Federal
Circuit, Seventh Circuit law applies to procedural summary
judgment issues.  See Arthur A. Collins, Inc. v. Northern Telecom
Ltd., 216 F.3d 1042, 1047-48 (Fed. Cir. 2000); Vivid
Technologies, Inc. v. American Science & Engineering, Inc.,
200 F.3d 795, 807 (Fed. Cir. 1999).

[4]Plaintiff has a Ph.D. in Food and Grain Science.  She
has been repeatedly advised that, although she may be well-versed
in the science related to her patent, she is not necessarily
well-versed in legal procedures.  She, however, chose to proceed
pro se and was still proceeding pro se at the time the summary
judgment motion was filed and briefed.  As is required by Local
Rule 56.2, defendant provided pro se plaintiff with notice as to
how to respond to a summary judgment motion.  See Outlaw v.
Newkirk, 259 F.3d 833, 841 (7th Cir. 2001); Jones v. Simek, 193
F.3d 485, 489 (7th Cir. 1999); Houston v. Sidley & Austin, 185
F.3d 837, 838 n.1 (7th Cir. 1999).  Additionally, the arguments

(7th Cir. 2002); <u>Hilt-Dyson v. City Of Chicago</u>, 282 F.3d 456, 462 (7th Cir.), <u>cert. denied</u>, 123 S. Ct. 97 (2002); <u>Schneiker v. Fortis Insurance Co.</u>, 200 F.3d 1055, 1057 (7th Cir. 2000); <u>Augustine Medical, Inc. v. Progressive Dynamics, Inc.</u>, 194 F.3d 1367, 1370 (Fed. Cir. 1999). The burden of establishing a lack of any genuine issue of material fact rests on the movant. <u>Outlaw v. Newkirk</u>, 259 F.3d 833, 837 (7th Cir. 2001); <u>Vivid Technologies, Inc. v. American Science & Engineering, Inc.</u>, 200 F.3d 795, 806-07 (Fed. Cir. 1999); <u>Wollin v. Gondert</u>, 192 F.3d 616, 621-22 (7th Cir. 1999). The nonmovant, however, must make a showing sufficient to establish any essential element for which she will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Billings v. Madison Metropolitan School District</u>, 259 F.3d 807, 812 (7th Cir. 2001). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. <u>Celotex</u>,

---

contained in plaintiff's <u>pro se</u> summary judgment pleadings must be liberally construed. <u>See</u> <u>Forshey v. Principi</u>, 284 F.3d 1335, 1357-58 & n.21 (Fed. Cir.), <u>cert. denied</u>, 123 S. Ct. 110 (2002); <u>Greer v. Board of Education of Chicago, Ill.</u>, 267 F.3d 723, 727 (7th Cir. 2001); <u>Kincaid v. Vail</u>, 969 F.2d 594, 598-99 (7th Cir. 1992), <u>cert. denied</u>, 506 U.S. 1062 (1993). <u>Pro se</u> plaintiff, however, is still required to point the court to the pertinent facts and the court is not obliged to scour the record and legal books for the facts or legal arguments that may support plaintiff's case. <u>Greer</u>, 267 F.3d at 727. The court previously denied defendant's motion to strike portions of plaintiff's declaration, but nonadmissible evidence contained in the declaration will not be credited. Recently, attorneys filed an appearance on behalf of plaintiff. The attorneys, however, have not yet appeared at any hearing and have not filed any of the briefs that have been considered on summary judgment nor any other pleading.

477 U.S. at 324. Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. See NLFC, Inc. v. Devcom Mid-America, Inc., 45 F.3d 231, 236 (7th Cir.), cert. denied, 515 U.S. 1104 (1995); Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc., 984 F.2d 1182, 1191 (Fed. Cir. 1993); Covalt v. Carey Canada, Inc., 950 F.2d 481, 485 (7th Cir. 1991); Collins v. Associated Pathologists, Ltd., 844 F.2d 473, 476-77 (7th Cir.), cert. denied, 488 U.S. 852 (1988). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Logan v. Commercial Union Ins. Co., 96 F.3d 971, 978 (7th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" Logan, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." Id. (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of

summary judgment." <u>McGinn v. Burlington Northern R.R. Co.</u>, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" <u>Logan</u>, 96 F.3d at 978 (quoting <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

<u>Outlaw</u>, 259 F.3d at 837.

Defendant raises various grounds on summary judgment. Defendant contends it cannot be liable for infringement because it does not manufacture or sell the accused breads, but instead licenses other entities to use its trademarks for breads that the other entities manufacture and sell. Defendant contends the '355 patent is invalid because at least one accused bread was on sale more than one year prior to the effective filing date of the patent application and because the written description in the '355 patent is deficient. Defendant also contends that the accused breads do not infringe the '355 patent because no bromate replacer is used and the '355 patent does not apply to baked bread, bread mix, or dough that is used in making the accused breads.

Resolving all genuine factual disputes and drawing all reasonable inferences in plaintiff's favor, the facts assumed to be true for purposes of defendant's summary judgment motion are as follows. The '355 Patent is entitled "Potassium Bromate Replacer Composition." Plaintiff contends claims 5 through 8 and 10 are being infringed. Claim 5 is directed to a slow acting ascorbic acid composition as a potassium bromate replacer and is referred to as "Replacer I." Claims 6 through 8 are dependent on claim 5. Claim 10 includes yeast food and is referred to as "Replacer II."

Claim 5 reads:

> 5. A potassium bromate replacer composition consisting essentially of, by weight:
> (a) about 0.001 to 0.03 parts ascorbic acid as an oxidant per 100 parts flour,
> (b) about 0.015 to 0.2 part food acid per 100 parts flour, said food acid selected from the group consisting of acetic acid, citric acid, fumaric acid, lactic acid, malic acid, oxalic acid, phosphoric acid, succinic acid, tartaric acid, fruit juice, fruit juice concentrate, vinegar, wine, and mixtures thereof, and
> (c) flour.

Claim 10 reads:

> 10. A potassium bromate replacer composition consisting essentially of, by weight:
> (a) about 0.001 to 0.03 parts ascorbic acid as an oxidant per 100 parts flour,
> (b) about 0.015 to 0.2 part food acid per 100 parts flour, said food acid selected from the group consisting of acetic acid, citric acid, fumaric acid, lactic acid, malic acid, oxalic acid, phosphoric acid, succinic acid, tartaric acid, fruit juice, fruit juice concentrate, vinegar, wine, and mixtures thereof,

(c) about 0.5 parts yeast food per 100 parts
                    flour, and
                    (d) flour.

     Defendant itself does not make, use, sell, offer for
sale, or import any of the accused breads.  Defendant licenses
other companies to produce the accused breads and distribute the
breads to retail stores for sale to consumers under the ConAgra
and Healthy Choice trademark.  The breads are to be produced in
accordance with formula sheets provided by defendant.  Defendant
receives license fees from the actual manufacturers.

     Breads are made by mixing ingredients to form dough,
proofing the dough, and baking the dough.  In the accused breads,
the dough is prepared in two stages.  First, a sponge dough is
formed by mixing flour, water, yeast, emulsifiers, yeast food,
ascorbic acid, and sometimes other ingredients.  The sponge dough
is allowed to partially rise and then additional flour, other dry
ingredients, and water are combined to form the dough before
proofing.  Dough is physically and chemically different from
flour and the other ingredients in the mix and the final bread
product is also physically and chemically different from the
dough.  As to all three of the accused breads, yeast and flour
are included in the ingredients for the sponge dough.  Ascorbic
acid and a food acid are among the ingredients added in the
second stage of preparing the dough.  However, flour, ascorbic
acid, food acid, and yeast (nor flour, ascorbic acid, and food
acid alone) are not separately mixed together as a stand-alone

composition and then added to the dough mixture.  Nor are ascorbic acid and food acid alone or ascorbic acid, food acid, and yeast separately mixed together as a stand-alone composition and then added to the dough mixture.

In a separate lawsuit against the Earthgrains Company, plaintiff has alleged that D'Italiano bread infringes the same claims of the '355 patent as plaintiff relies on in the present case.[5]  Defendant provides deposition testimony of Don Knott, who held positions as vice president of manufacturing and vice president of production at Earthgrains, its predecessor, and its current owner.[6]  Knott testified regarding formulas for D'Italiano bread.[7]  As regards Madison D'Italiano formula number 32 ("Formula 32"), Knott testified that "substantially the same formula" had been used since 1988 and that bread based on Formula 32 was on sale in May 1992.  The formula sheet for Formula 32 indicates 40 pounds of ascorbic acid per 100 pounds of flour.  Knott testified that this was an error and instead should be understood as 4 tablets of ascorbic acid.  He testified that each

---

[5]Defendant provides requests to admit in which plaintiff admits that she alleges Earthgrains' "D'ITALIA Italian Bread" infringes the pertinent claims of the '355 patent.  For present purposes, it will be assumed that this refers to the same product as "D'Italiano bread."

[6]D'Italiano bread was made by Metz Baking Company which was purchased by Earthgrains in March 2000.  Earthgrains was purchased by Sara Lee in July 2001.

[7]At his deposition, Knott was shown exhibits containing the formulas.  Those exhibits have not been provided as part of the pending summary judgment motion.

tablet would represent 120 parts per million ("ppm") of ascorbic acid per 100 pounds of flour, for a total of 480 ppm. However, with its reply, defendant provides a declaration of Knott in which he states he was mistaken at the deposition and that each tablet actually represents 30 ppm for a total of 120 ppm in Formula 32, not a total of 480 ppm. Knott also testified that yeast food and vinegar were included in Formula 32, but does not identify the amount of those ingredients. He also testified that it was his understanding that Formula 32 was one of the accused breads in plaintiff's suit against Earthgrains.

Without providing any supporting documents, plaintiff contends there were at least 86 formulas for D'Italiano bread. As to five of the formulas,[8] plaintiff points out that the amounts of vinegar and ascorbic acid do not fall within the ranges of the patent claims at issue or, as to one, that potassium bromate is an ingredient. Based on Knott's testimony, plaintiff points out that there is .048% ascorbic acid in Formula 32. See Pl. Answer to Stmt. of Facts ¶ 25. If Knott's subsequent declaration is taken into account, though, ascorbic acid is .0012%, which is within the range contained in claims 5 and 10. Plaintiff does not contend that the amount of vinegar (food acid) or yeast used in Formula 32 falls outside the ranges

---

[8]These five apparently are ones referred to during Knott's deposition and apparently include three or four referred to in Defendant's Statement of Fact ¶ 25.

of claims 5 and 10.[9]  Plaintiff contends that the current

D'Italiano bread formulas that she accuses of infringing the '355

patent are different from those used in 1992 and earlier.

Even if the accused breads infringe the '355 patent,

defendant contends it cannot be liable for infringement because

it licensed others to produce the accused breads, but did not

itself produce any form of the accused breads.  The patent

statute prohibits "whoever without authority makes, uses, offers

to sell, or sells any patented invention . . . or imports [it]

into the United States."  35 U.S.C. § 271(a).  It also prohibits

"[w]hoever actively induces infringement of a patent."  Id.

§ 271(b).  Plaintiff makes no attempt to dispute defendant's

evidence that it did not itself make, use, offer for sale, sell,

or import the accused breads.  Defendant, therefore, cannot be

held liable for direct infringement under § 271(a).  See L.A.

Gear, Inc. v. E.S. Originals, Inc., 859 F. Supp. 1294, 1297-1300

C.D. Cal. 1994).  Plaintiff, however, does not expressly limit

her claims to direct infringement and the pro se complaint will

_____

[9]As to the use of vinegar at the high-end of the food
acid range of the patent claims, plaintiff notes that the acetic
acid in vinegar is the least preferred food acid as a potassium
bromate replacer and that the vinegar more likely was included in
Formula 32 because it reduces mold growth.  See Pl. Answer to
Stmt. of Facts ¶ 33(1).  However, the reason for the inclusion
of vinegar and whether the manufacturer appreciated its function
as part of a potassium bromate replacer does not matter if
Formula 32 otherwise satisfies all the limitations set forth in
claims 5 and 10 of the '355 patent.  See Abbott Laboratories v.
Geneva Pharmaceuticals, Inc., 182 F.3d 1315, 1318-19 (Fed. Cir.
1999), cert. denied, 528 U.S. 1078 (2000); Scaltech, Inc. v.
Retec/Tetra, LLC, 269 F.3d 1321, 1330 (Fed. Cir. 2001).

not be read in such a restrictive manner. Even if it were to be so read, plaintiff would likely be entitled to amend her complaint to add a § 271(b) claim.

As a licensor of the accused breads which provides formulas to the licensees and receives fees from the licensees, defendant still may be liable for patent infringement under § 271(b). The basic elements for a § 271(b) claim are: "1) an inducer's knowledge of the asserted patent; 2) direct infringement by a third party allegedly induced; 3) the inducer's 'actual intent to cause the acts which he knew or should have known would induce actual infringements;' and 4) the commission of an act that constitutes inducement, not merely the power to act or the failure to act." Sony Electronics, Inc. v. Soundview Technologies, Inc., 157 F. Supp. 2d 190, 195 (D. Conn. 2001) (citations omitted). The third element does not require the specific intent to cause infringement, but the intent to cause the acts that constitute infringement while having actual or constructive knowledge that infringement would be caused. Moba, B.V. v. Diamond Automation, Inc., 325 F.3d 1306, 1318 (Fed. Cir. 2003); Minnesota Mining & Manufacturing Co. v. Chemque, Inc., 303 F.3d 1294, 1304-05 (Fed. Cir. 2002), cert. denied, 123 S. Ct. 1779 (2003).

Defendant does not make any express arguments concerning contributory infringement. Therefore, it is questionable whether plaintiff had any burden to respond to the summary judgment motion by producing evidence that would support a contributory

infringement claim. But even assuming the issue is properly before the court, the record supports all the elements of a contributory infringement claim. Assuming the accused breads infringe the '355 patent, the second element would be satisfied by the licensees' sale of the accused breads. In its answer to the complaint, defendant admitted that it had received a November 5, 1999 letter from plaintiff advising it of the '355 patent and possible infringement. Therefore, the record supports that the first element was satisfied at least as far back as November 1999. The fourth element is satisfied in that defendant actively encouraged production of the accused breads by providing the formulas for the breads and licensing others to use the formulas and defendant's trademarks. From defendant's knowledge of the existence of the patent and its provision of the formulas for producing the accused breads, it can be inferred that the third element (intent) is satisfied. See Water Technologies Corp. v. Calco, Ltd., 850 F.2d 660, 668-69 (Fed. Cir.), cert. denied, 488 U.S. 968 (1988); CFMT, Inc. v. Steag Microtech, Inc., 14 F. Supp. 2d 572, 592 (D. Del. Jun 18, 1998), aff'd in part, rev'd in part on other grounds, 194 F.3d 1336 (Fed. Cir. 1999) (unpublished order). See also Stamicarbon, N.V. v. McNally-Pittsburg Manufacturing Corp., 302 F. Supp. 525, 531 (D. Kan. 1969) (contributory infringement can result from providing to the direct infringer plans for the infringing device).

Plaintiff's infringement claims will not be dismissed based on defendant not participating in the alleged infringement. However, any remaining infringement claim will be limited to one for contributory infringement under § 271(b).

Defendant contends the '355 patent is invalid based on the on-sale bar. See 35 U.S.C. 102(b). The earliest possible application date related to the '355 patent is November 5, 1993. Therefore, the '355 patent is invalid if the claimed invention was on sale prior to November 5, 1992. Defendant contends that D'Italiano bread that plaintiff alleges infringes the patent was already on sale in May 1992 or earlier.

The burden is on defendant to show by clear and convincing evidence that an embodiment of the '355 patent was on sale prior to November 1992. Lacks Industries, Inc. v. McKechnie Vehicle Components USA, Inc., 322 F.3d 1335, 1349-50 (Fed. Cir. 2003); Schumer v. Laboratory Computer Systems, Inc., 308 F.3d 1304, 1315 (Fed. Cir. 2002); Beckson Marine, Inc. v. NFM, Inc., 292 F.3d 718, 725 (Fed. Cir. 2002); Vanmoor v. Wal-Mart Stores, Inc., 201 F.3d 1363, 1366 (Fed. Cir.), cert. denied, 531 U.S. 821 (2000). That burden can be satisfied if a device that has been accused of infringement was on sale prior to the critical date. Vanmoor, 201 F.3d at 1366. To be clear and convincing proof, the plaintiff must continue to claim that the device infringes the pertinent claims of the patent, see Beckson, 292 F.3d at 726; ConAgra I, 2003 WL 1193322 at *2 n.3, and the device that was sold prior to the critical date must be the same as that

presently being accused, see Vanmoor, 201 F.3d at 1366; Evans
Cooling Systems, Inc. v. General Motors Corp., 125 F.3d 1448,
1451 (Fed. Cir. 1997), cert. denied, 522 U.S. 1115 (1998).  Here,
plaintiff continues to contend that D'Italiano bread infringes
the '355 patent.  However, she contends that the D'Italiano
breads on sale in 1992 and earlier had different formulas than
during the current time period covered by her present
accusations.

        Plaintiff does not provide any admissible evidence as to
the current and past formulas for D'Italiano bread.  However, the
burden is on defendant to show invalidity based on the on-sale
bar.  Thus, to succeed on this aspect of its summary judgment
motion, defendant must provide undisputed evidence that the
D'Italiano bread sold in 1992 is identical to that presently
being produced, or at least that it was within the same ranges
that plaintiff presently contends will result in infringement of
the '355 patent.  Knott testified that a 1992 formula for
D'Italiano bread is "substantially the same" as that presently
used, not that the two formulas are identical.  Such testimony
does not show that the 1992 formula necessarily contained the
same amounts of food acid and ascorbic acid as the present
accused bread.  The only formula as to which some details are
provided is Formula 32.  However, the Formula 32 formula sheet
that was shown to Knott at his deposition referred to 40 pounds
of ascorbic acid.  While such an amount of ascorbic acid was
clearly a drafting error on that sheet, Knott testified that the

- 14 -

correct amount was 4 tablets representing 480 ppm, which would be
outside the range claimed in the '355 patent. With its reply,
defendant provides a declaration of Knott stating that that was a
misstatement and it really was 4 tablets representing a total of
120 ppm, which is within the range of ascorbic acid claimed in
the '355 patent. At best, however, this supports a factual
dispute as to the amount of ascorbic acid being used in 1992 for
Formula 32 bread. Additionally, Knott's testimony does not state
how much vinegar nor how much yeast food was in Formula 32,
though plaintiff may be conceding the amounts were within the
ranges claimed in the '355 patent. More importantly, Knott's
testimony does not support that there was no potassium bromate in
the 1992 version of Formula 32. A disputed factual issue exists
as regards whether D'Italiano bread on sale in May 1992 was made
with a formula that plaintiff contends would infringe the '355
patent. Defendant is not entitled to summary judgment based on
the on-sale bar.

Defendant also contends that the claims of the '355
patent that are at issue are invalid because of a deficient
written description. Defendant contends the written description
is deficient because it makes no mention of flour being part of
the claimed invention whereas each of the claims at issue include
flour. Plaintiff contends that flour is not really part of her
invention, but was included in the claims at the behest of the
patent examiner because the replacer must be mixed with other
ingredients in order to produce bread or other baked products.

Plaintiff contends "[f]lour is included in the claims of the '355 patent to particularly point out and distinctly claim that the plaintiff's potassium bromate replacers I and II are used with flour in the manufacture of yeast-leavened products, but **not** used with fruit juices, wines, etc." Pl. Response Br. at 7.

The parties are in agreement that the written description describes a potassium bromate replacer composition that does not include flour. During the prosecution history, plaintiff also expressly represented that flour was not a component of the invention. The parties also agree that the written description states that the replacer is intended to be used with products that include flour. The issue on summary judgment is whether including flour, as an ingredient in claims that set forth "potassium bromate replacer composition[s] consisting essentially of" the listed ingredients, is inconsistent with the written description so as to make such claims invalid.

A patent is required to have a written description of the invention. 35 U.S.C. § 112. "In order to comply with the written description requirement, the specification 'need not describe the claimed subject matter in exactly the same terms as used in the claims; it must simply indicate to persons skilled in the art that as of the [filing] date the applicant had invented what is now claimed.'" All Dental Prodx, LLC v. Advantage Dental Products, Inc., 309 F.3d 774, 779 (Fed. Cir. 2002) (quoting Eiselstein v. Frank, 52 F.3d 1035, 1038 (Fed. Cir. 1995)). "[T]he failure of the specification to specifically mention a

limitation that later appears in the claims is not a fatal one when one skilled in the art would recognize upon reading the specification that the new language reflects what the specification shows has been invented." All Dental, 309 F.3d at 779. In construing claim language and eliminating possible ambiguities, intrinsic evidence should be considered, including the written description and prosecution history. Id. at 780. The language of a claim need not be a model of clarity as long as it is intelligible and capable of being understood in the context of other intrinsic evidence such as the written description. Id. at 779.

The "Summary of the Invention" section of the '355 patent states:

> The present invention relates to potassium bromate replacer comprising an ascorbic acid composition that replaces an oxidizing agent of potassium bromate. The potassium bromate replacer essentially comprises ascorbic acid, food acid, and/or phosphate.[10]
> In methods for preparing the ascorbic acid composition, it has been discovered that a food acid added in an effective amount slows down oxidation of ascorbic acid to dehydroascorbic acid in a dough and thus, ascorbic acid is changed to a slow acting oxidant that is functional throughout the entire manufacturing process. Now ascorbic acid and food acid replace potassium bromate. It has also been found that a phosphate added in an effective amount enhances complexing power of the food acid. This increase in an amount of copper-food acid complex formed during the mixing stage of dough is particularly beneficial to continuously mixed and frozen doughs which require a high level of oxidant.

---

[10]Claims that are not at issue in the present case include phosphate as an ingredient.

Thus, ascorbic acid combined with a food acid and a phosphate is an effective oxidant that produces properly oxidized dough needed in the production of high quality, yeast-leavened products using various methods of the breadmaking process.

In the "Detailed Description of the Invention and Preferred Embodiments" section of the '355 patent, adding ascorbic acid, food acid, and phosphate to bread mixes is discussed and described. These ingredients are described as being added to the mix that is used to prepare dough. The three potassium bromate replacer ingredients are often referred to as a combination or composition. However, there is no indication that the three must first be combined together to form a stand-alone replacer composition and then be added as a whole to the bread mix or dough. Instead, these ingredients are described as being added along with the other dough ingredients and then mixed together with all the ingredients to form dough. There are a number of specific references to adding the phosphate and/or food acid to a dough mixture that already contains ascorbic acid. <u>See</u> '355 patent col. 4, ll. 19-21; col. 4, ll. 35-37; col. 6, ll. 4-5; col. 7, ll. 10-11; col. 7, ll. 62-64. It is clear from the written description that the potassium bromate replacer is not a distinct and separate stand-alone mixture that must be formed and then added to a bread mix or dough. Instead, it is a list of ingredients that are to be included among the other ingredients that go into a dough or bread mix, with the required amounts stated in proportion to the flour that is included in the mix.

It is also clear from the written description that potassium bromate is not to be included among the bread or dough mix ingredients.

It is true that the term "composition" is a term of art in both chemistry and patent law. PIN/NIP, Inc. v. Platte Chemical Co., 304 F.3d 1235, 1243-44 (Fed. Cir. 2002). "It generally refers to mixtures of substances." Id. at 1244. However, nothing in the written description limits the mixture to occurring at a specific time in the bread mix or dough preparation process. Thus, the '355 patent may and should be read as applying to yeast-leavened products that contain the claimed proportions of ingredients at any time during the mixing or dough preparation process. Cf. Exxon Chemical Patents, Inc. v. Lubrizol Corp., 64 F.3d 1553, 1558 (Fed. Cir. 1995), cert. denied, 518 U.S. 1020 (1996). Moreover, regardless of the common understanding of the term "composition," it must be construed within the context of the patent in which it appears. PIN/NIP, 304 F.3d at 1244.[11] As previously explained, the written description is clear that it is referring to including

_____

[11]Defendant also contends that titling the patent "Potassium Bromate Replacer Composition" establishes that it is a stand-alone product. However, in construing patent claims, no special significance is placed on the title of the patent; any claim limitation that is found must otherwise be in the claim language itself. Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1312-13 (Fed. Cir. 1999); Minka Lighting, Inc. v. Craftmade International, Inc., 2001 WL 1012685 *4 (N.D. Tex. Aug. 20, 2001).

the stated proportion of ingredients in a bread or dough mix and having them mixed together with the other ingredients.

Defendant contends that the language "consisting essentially of" that appears in the preamble of each of the claims at issue limits the claims to compositions containing only those ingredients and no other ingredients that materially affect the basic and novel characteristics of the composition. By using the term "consisting essentially of" prior to a list of ingredients in a composition claim, "the drafter signals that the invention necessarily includes the listed ingredients and is open to unlisted ingredients that do not materially affect the basic and novel properties of the invention." PPG Industries v. Guardian Industries Corp., 156 F.3d 1351, 1354 (Fed. Cir. 1998). Defendant contends the claims cannot apply to bread mixes or dough because they contain additional ingredients that affect the bromate replacer. Defendant contends water and enzymes are additional bread ingredients that affect the chemical changes that occur when bread mix ingredients are transformed into dough during mixing and from dough to finished bread in the baking process. There is no dispute that physical and chemical changes occur during the dough and baking processes. However, the novel property of the claimed invention is its effect on the oxidization process, particularly its slowing of the oxidizing properties of ascorbic acid so that it may effectively function throughout the breadmaking process. Defendant points to no evidence that any of the unnamed ingredients of bread mix

materially affect the oxidizing properties of ascorbic acid. The use of the "consisting essentially of" language does not limit the claims at issue to a stand-alone potassium bromate replacer composition instead of ingredients included in a bread mix.

As to the claims at issue, the essential ingredients of a potassium bromate replacer composition are stated. The amounts of ascorbic acid, food acid, and (as to claim 10) yeast food are stated in proportional weight to the flour in the mix. Flour is also listed as an essential ingredient, but no weight is given. Since stated as a proportion of the flour in the mix, the mix for which the composition is being included must include flour. In that sense, flour is an essential ingredient, though as an ingredient of the bread mix, not as part of the bromate replacer itself. The written description, however, makes clear that the flour is not part of the replacer formula itself and this is apparent from the claims as well since they state no proportion for the flour itself. The claims are readily understandable in light of the written description; they are not ambiguous and, construed in light of the written description, the claims do not claim an invention that is not described in the written description. The inclusion of flour in each of the claims at issue does not make them invalid because of an insufficient written description or because inconsistent with or outside the written description.

The previous discussion of claim construction[12] essentially dispenses with defendant's other contentions. Defendant contends the accused breads cannot infringe because the finished bread product is no longer flour and no longer contains ascorbic acid which is destroyed during the baking process. As previously indicated, the claimed composition goes to the proportions existing during the bread mix or dough stage of production. Cf. Exxon, 64 F.3d at 1558; Biogen, Inc. v. Berlex Laboratories, Inc., 318 F.3d 1132, 1141-42 (Fed. Cir. 2003); Astra Aktiebolag v. Andrx Pharmaceuticals, Inc., 222 F. Supp. 2d 423, 540-41 (S.D.N.Y. 2002). Defendant does not contend that the claimed proportion of ingredients does not exist at the bread mix or dough stage of production.

Defendant also contends the accused breads cannot infringe because the '355 patent is limited to a stand-alone bromate replacer and no such stand-alone composition is used in producing the accused breads. As was already discussed in construing the patent claims, they are not limited to a stand-alone composition. Again, the claims apply to including the stated proportion of ingredients in a bread mix or dough mix and defendant does not contend that the accused breads are not prepared using a bread mix or dough formula that contains the proportion of ingredients stated in the claims at issue.

---

[12]The construction of the claims contained herein satisfies the "Markman" requirement that the court construe the claims.

- 22 -

For the foregoing reasons, defendant is not entitled to summary judgment except that plaintiff's claims will be limited to ones pursuant to 35 U.S.C. § 271(b). Any direct infringement claim under 35 U.S.C. § 271(a) will be dismissed.

To the extent the parties expect to raise issues at trial that may involve complex chemical issues requiring a court-appointed expert, they should so advise the court at the status hearing to be held on June 11, 2003 at 11:00 a.m. At the status hearing, the parties should be prepared to address: (1) the possibility of settlement and (2) issues that would be expected to be raised at trial.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [48] is granted in part and denied in part. Any claim for direct infringement under 35 U.S.C. § 271(a) is dismissed. Status hearing set for June 11, 2003 at 11:00 a.m.

ENTER:

_William T. Hart_
UNITED STATES DISTRICT JUDGE

DATED: MAY 22 , 2003