IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

YOON JA KIM,                )
                            )
        Plaintiff,           )
        Counterdefendant,    )
                            )   No. 01 C 2467
    v.                      )
                            )
CONAGRA FOODS, INC., a Nebraska )
corporation,                )
                            )
        Defendant,           )
        Counterplaintiff.    )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Yoon Ja Kim is the holder of U.S. Patent No. Re. 36,355 (the "'355 Patent"), which issued on October 26, 1999 as a reissue of U.S. Patent No. 5,510,129 (the "'129 Patent"). The '355 Patent is a patent for a potassium bromate replacer composition. Potassium bromate is an oxidizing agent for bread dough, but its use became less common after it was discovered to cause cancer in laboratory animals. Plaintiff's composition is a substitute for potassium bromate. Plaintiff alleged that defendant ConAgra Foods, Inc. contributed to or induced infringement of the '355 patent by licensing others to produce certain breads under the ConAgra and Healthy Choice brand name using formulas containing ascorbic acid, food acid, flour and/or

other ingredients in the proportions set forth in Claims 5, 6, 7, 8, and 10 of the '355 patent.[1]

Following a trial before a jury, the jury returned a mixed verdict on the claims that were tried. The jury considered whether the '355 patent was infringed by three accused products. It found that Healthy Choice Natural Wheat bread did not infringe claims 5, 6, 7, and 8 of the '355 patent. The jury found that claim 10 of the '355 patent was infringed by Healthy Choice Seven-Grain bread and Healthy Choice Whole Grain bread and that defendant induced that infringement. None of the five claims at issue were found to be invalid because of anticipation or obviousness. Defendant's inducement of infringement was not found to be willful. The jury awarded $490,000.00 in compensatory damages.

At trial, defendant moved for judgment as a matter of law, which was denied subject to being renewed after the verdict was returned. See Fed. R. Civ. P. 50(b). Following the entry of judgment, defendant timely renewed its motion for judgment as a matter of law. Defendant contends that plaintiff failed to prove all the elements of her infringement claim as to the two products that the jury found infringed claim 10 of the '355 patent. It

---

[1] For further background on this case, see Kim v. ConAgra Foods, Inc., 2003 WL 21222266 (N.D. Ill. May 23, 2003) ("ConAgra II")(summary judgment ruling as to direct/contributory infringement, on-sale bar, adequacy of written description, and certain claim construction/infringement issues) and Kim v. ConAgra Foods, Inc., 2004 WL 626140 (N.D. Ill. March 26, 2004) ("ConAgra IV") (summary judgment ruling as to recapture defense).

contends that plaintiff failed to prove that the claim 10
ingredients act as a potassium bromate replacer in Seven-Grain
and Whole Grain breads. Defendant also contends that plaintiff
failed to show by actual testing that other ingredients (gluten,
ferrous oxide, and enzymes) in the two accused products did not
materially affect the invention. Also, defendant contends that
the words "consisting essentially of" in the patent limit the
patent to compositions of the items in the patent and preclude
application of the patent to compositions having other additional
ingredients such as the accused breads.

Defendant asserts that the essential elements in the
'355 patent - ascorbic acid and fruit juices -- have been known
to, and used by, the baking industry for many years. It claims
that ascorbic acid is an oxidizing agent and that raisin juice
has been used by it and others for color and flavor.

Defendant further contends that evidence at trial
conclusively showed that claim 10 was invalid because anticipated
or obvious in light of certain prior art. Defendant also renews
arguments previously rejected on summary judgment regarding claim
construction, the patent's written description, and the defense
of recapture. Plaintiff has responded to defendant's Rule 50
motion and has also brought motions related to enforcing the
judgment. Plaintiff requests a permanent injunction, attorney
fees, and prejudgment interest.[2]

---

[2]At various times during this case, plaintiff has
proceeded pro se. At trial and during the briefing of the

Claim 10 reads:

> 10. A potassium bromate replacer composition consisting essentially of, by weight:
> (a) about 0.001 to 0.03 parts ascorbic acid as an oxidant per 100 parts flour,
> (b) about 0.015 to 0.2 part food acid per 100 parts flour, said food acid selected from the group consisting of acetic acid, citric acid, fumaric acid, lactic acid, malic acid, oxalic acid, phosphoric acid, succinic acid, tartaric acid, fruit juice, fruit juice concentrate, vinegar, wine, and mixtures thereof,
> (c) about 0.5 parts yeast food per 100 parts flour, and
> (d) flour.

The jury was instructed:

> There is infringement of a particular claim of the '355 Patent by a particular accused product if (a) each element of that claim is incorporated into the accused product and (b) any additional ingredients in the accused product do not materially affect the basic and novel characteristics of the invention.

Instructions at 25.[3]

The jury was further instructed that the words of the patent claims should be given their "plain and ordinary meaning." Id. at 33. Additionally, the jury was given specific instructions regarding certain language or constructions of the

---

postjudgment motions, plaintiff was represented by counsel. Subsequent pro se filings have indicated that plaintiff no longer desires to be represented by trial counsel, but counsel has not withdrawn from the case. Notice of today's ruling is being sent to counsel and also directly to plaintiff.

[3] A copy of the jury instructions is in the record as Docket Entry 156.

'355 patent, including the following:

> To infringe one of the claims of the '355
> Patent, a bread must (a) contain ingredients in
> the proportions claimed in claim . . . 10 and,
> (b) in that particular bread, the ingredients
> must act as a Potassium Bromate Replacer, that
> is, the ingredients must perform essentially the
> same function in the production of that bread as
> would potassium bromate.

Id.

The jury instructions included definitions of certain baking and scientific terms that had been used in the testimony at trial. The parties had agreed to these definitions. "Potassium bromate" and "potassium bromate replacer" were defined as follows:

> 23. **Potassium Bromate.** Potassium Bromate is a
> slow acting oxidant once commonly used in
> the breadmaking process. Its function in
> the breadmaking process is to strengthen the
> dough, increase loaf volume, and contribute
> to fine crumb grain.
>
> 24. **Potassium Bromate Replacer.** A Potassium
> Bromate Replacer is a substitute for the use
> of potassium bromate in the breadmaking
> process. In order to be a Potassium Bromate
> Replacer, the substance must perform
> essentially the same function in the
> breadmaking process as would potassium
> bromate.

Id. at 18.

Judgment as a matter of law is appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to find for" a party on a particular issue. Fed. R. Civ. P.

50(a)(1); Poly-America, L.P. v. GSE Lining Technology, Inc., 383 F.3d 1303, 1307 (Fed. Cir. 2004). It must be determined whether, viewing the evidence in the light most favorable to plaintiff and giving plaintiff all reasonable inferences, the evidence is sufficient to support that the two accused products infringed claim 10 of the '355 patent. See id.; Eolas Technologies Inc. v. Microsoft Corp., 399 F.3d 1325, 1332 (Fed. Cir. 2005).

Here, the jury was instructed that infringement of claim 10 of the '355 patent by one of the two accused products required a showing that, "in <u>that particular bread</u>, the ingredients act[ed] as a Potassium Bromate Replacer, that is, the ingredients must perform essentially the same function in the production of that bread as would potassium bromate." Instructions at 33 (emphasis added). Defendant does not dispute that evidence adequately showed that Seven-Grain and Whole Grain contained the pertinent ingredients in the proportions set forth in claim 10. Defendant, however, contends that there was insufficient evidence from which the jury could find that, in these particular breads, the ingredients performed the same essential functions as potassium bromate during the sponge dough process used to produce the breads.

Evidence showed that defendant licensed a sponge dough process for producing the accused products. "The Sponge Dough Process is a method of breadmaking in which a sponge is made by mixing a part of the total flour amount with all or part of the

water amount, and usually with all the yeast and yeast food. This mixture is allowed to ferment until ready for incorporation with the remainder of the flour and water and other ingredients to make the dough." Instructions at 19.

Using the sponge dough process, defendant's expert produced various versions of two Healthy Choice products: Seven-Grain and Whole Wheat.[4] He produced four versions of each bread: one using the standard formula, which included ingredients in the proportions stated in claim 10; a second version that omitted all the tartaric acid (tartaric acid is one of the food acids listed in subsection (b) of claim 10); a third version that omitted both the ascorbic acid and tartaric acid, but which used potassium bromate; and a fourth version that used potassium bromate and tartaric acid, but no ascorbic acid. The expert testified that, contrary to plaintiff's theory, the versions with both ascorbic acid and tartaric acid produced less volume than when tartaric acid was omitted or potassium bromate was substituted. Defendant contends this shows that, in the two accused products, the use of ascorbic acid and tartaric acid did not act as a potassium bromate replacer because it did not function to increase loaf volume. Defendant's evidence further tended to show that enzymes contributed to loaf volume in the accused products.

---

[4]Defendant's expert testified that Whole Wheat was one of the bread products that was a subject of the trial. Oct. 6, 2004 Tr. at 557. "Whole Wheat" apparently was a prior or second name for "Whole Grain."

Plaintiff responds by pointing to her own experiments and other experiments by defendant's expert (from a report not in evidence although referred to in testimony) in which the use of ascorbic acid and a food acid resulted in increased volume. Those experiments, however, involved production using the no time dough process. "The No Time Dough Process is a breadmaking process in which the fermentation stage is skipped. Directly after mixing the bread ingredients, the dough is formed and proofed." Instructions at 17. Plaintiff's experiments did not duplicate the sponge dough process used in baking the accused products. The only baking example described in the '355 patent is a no time process referred to in claims 6 and 7 as having been conducted in a commercial bakery. However, no evidence was presented disclosing any actual results in a commercial bakery.

Plaintiff's experiments did not involve production of variations of Seven-Grain or Whole Grain breads. Defendant's expert testified that the no time dough process cannot be assumed to produce the same results as the sponge dough process used for the accused products in that significant differences could result from omitting the fermentation stage of breadmaking.

The burden was on plaintiff to show that using the claim 10 composition in Seven-Grain and Whole Grain acted as a potassium bromate replacer in those particular breads. Plaintiff's experiments and the replications by defendant's expert upon which plaintiff also relies did not involve the particular accused products.

Also, the accused products used a different and much longer breadmaking process than the experiments upon which plaintiff relies. At most, from plaintiff's evidence, a weak inference could be drawn that there would be a potassium bromate replacer effect in the accused products as well. However, there is also evidence regarding the accused products themselves. That evidence only supports that the ascorbic acid and tartaric acid used in these products did not act as a potassium bromate replacer. In light of the evidence directly concerning the accused breads, plaintiff's evidence regarding other breads produced using the no time dough process was an insufficient basis for the jury finding that there was a potassium bromate replacer effect in the accused breads.

Even if the "Whole Wheat" bread that defendant's expert tested was not the Whole Grain bread that is one of the accused products in the case, plaintiff still did not meet her burden. Whole Grain bread is also produced using the sponge dough process. In the record, there is evidence regarding two Healthy Choice breads (Seven-Grain and Whole Wheat) produced using the sponge dough process. That evidence only supports that ascorbic acid and tartaric acid did not act as potassium bromate replacer for those breads using the sponge dough process. In light of such evidence, plaintiff's evidence regarding bread produced using the no time dough process would still be an insufficient basis for the jury finding that the claim 10 ingredients acted as a potassium bromate replacer in Whole Grain in particular.

It is unnecessary to decide whether plaintiff has sufficiently shown that other components in the accused products (gluten, ferrous oxide, and enzymes) had no material effect on the potassium bromate replacer composition. Plaintiff is a qualified chemist and her testimony, even without testing, may be sufficient to support her opinion that any of the components had no effect as replacers.

For the foregoing reasons, plaintiff failed to submit evidence sufficiently supporting an essential element of the infringement claims on which the jury found in her favor. Therefore, the verdict in her favor must be vacated and judgment must instead be granted in defendant's favor on those claims. Since plaintiff no longer has a judgment in her favor, her three pending motions will be denied. It is unnecessary to consider other arguments of defendant that go only to the issue of whether a judgment should have been entered in plaintiff's favor on her claims. It is still necessary to consider defendant's contentions as to invalidity because that goes to the question of whether defendant should have been granted a declaratory judgment on its counterclaim.

Acknowledging that the court has previously ruled otherwise, defendant seeks reconsideration of the prior ruling that the '355 patent is not invalid based on the written description. Defendant presents no convincing basis for modifying the prior ruling. See ConAgra II, 2003 WL 21222266 at *6-8. Defendant also seeks reconsideration of the prior

ruling as to the recapture rule. See ConAgra IV, 2004 WL 626140. Defendant presents no convincing basis for modifying the prior ruling. Also, it is noted that invalidity based on the recapture rule was not raised in the counterclaim. To the extent it is relevant to today's ruling, the court also declines defendant's request to modify the prior construction of the '355 patent as not requiring that the bromate replacer be a stand-alone mixture or additive. See ConAgra II, 2003 WL 21222266 at *7.[5]

Defendant contends that the '355 patent was invalid because anticipated or obvious in light of two prior art references. These contentions were presented to the jury as affirmative defenses and each was rejected by the jury. In order to overturn the jury's verdict, the evidence, construed in the light most favorable to plaintiff, must only support that clear and convincing evidence showed the '355 patent was invalid.

The first prior art reference raised by defendant is the Jorgensen patent issued in 1939, U.S. Patent No. 2,149,682. The Jorgensen patent was intended to improve the baking strength of flour. Jorgensen indicates that he was looking for a natural ingredient that could be used as an oxidant instead of chemical ingredients such as ammonium persulphate, potassium bromate,

---

[5]In Kim v. Earthgrains Co., 2005 WL 66071 *11-12 (N.D. Ill. Jan. 11, 2005), Magistrate Judge Mason also construed the '355 patent in this manner. In Kim v. Dawn Food Products, Inc., 2004 WL 2658068 *4-6 (N.D. Ill. Oct. 13, 2004), Judge St. Eve also construed the language of the '355 patent. That case, however, did not address the issue of whether the patent should be read as requiring a stand-alone mixture or additive.

sodium perborate, and like products which he considered "outside the scope of what can be termed 'normal physiological constituents of food.'" Jorgensen's solution was to use ascorbic acid from natural sources in quantities of .2 to 5 grams of ascorbic acid per 100 kilograms of flour. An example would be to use lemon juice at a suggested ratio of less than five liters per 100 kilograms of flour. Exh. 203.

Defendant's expert testified that mixing five liters of lemon juice with 100 kilograms of flour would fit within the ratios contained in claim 10 of the '355 patent. He based this testimony on data regarding the average amount of ascorbic acid in a lemon. While acknowledging that ascorbic acid levels of individual lemons vary, he testified that five liters of lemon juice would likely have an ascorbic acid level near the average because of the large number of lemons required to produce that quantity. The lemon juice example in the Jorgensen patent, however, also states that the lemon juice should be neutralized using an alkali such as sodium hydroxide. Plaintiff testified that adding the sodium hydroxide produces sodium citrate instead of citric acid, which diminishes the chelating power of the mixture. She also testified that spraying on liquid ascorbic acid solution in the form of lemon juice as suggested by Jorgensen, produces a different effect than using dry ascorbic acid as in the '355 patent. That is because this liquid form will mix with oxygen in the air and transform from ascorbic acid before being effective. In light of plaintiff's testimony, the

jury had a sufficient basis for rejecting both the anticipation and obviousness defense based on the Jorgensen patent.

Defendant contends the '355 patent was invalid as obvious[6] based on the DeStefanis publication, a published patent application from Great Britain. Again, the burden was on defendant to prove obviousness by clear and convincing evidence. As defendant concedes, DeStefanis does not expressly set forth the ranges that are in claim 10 of the '355 patent. Defendant contends DeStefanis contains a typographical or drafting error in a table that can be determined by comparing the text. But even if that is the only reasonable inference that could have been drawn by the jury, other factors would have been a sufficient basis to support the jury's finding that defendant had failed to meet its burden on this issue. Defendant's own expert testified that DeStefanis was attempting to speed up the oxidation effect, which was contrary to the '355 patent being intended to slow down oxidation during the breadmaking process. Accepting this testimony, DeStefanis teaches away from plaintiff's invention instead of making the '355 patent obvious.

On the other hand, plaintiff herself testified that some of the examples in DeStefanis would infringe the '355 patent. The jury, however, was not bound to accept plaintiff's testimony. It was within the province of the jury to accept the testimony of

---

[6]Although defendant's present brief refers to the '355 patent being anticipated by DeStefanis, at trial it raised DeStefanis as a basis for obviousness, not anticipation. See Instructions at 34, 39.

- 13 -

defendant's expert and also take into account that the patent examiner had considered DeStefanis without rejecting the patent application, see Abbott Laboratories v. Syntron Bioresearch, Inc., 334 F.3d 1343, 1357 (Fed. Cir. 2003), and reasonably conclude that the evidence as a whole was not clear and convincing that the '355 patent was obvious in light of DeStefanis.

At trial, defendant also contended that the '355 patent was anticipated or obvious in light of a prior use in a Sara Lee bread product. See Instructions at 34, 39. Prior to trial, in a summary judgment motion, defendant had relied on a Sara Lee bread product to argue that the '355 patent was invalid based on the on-sale bar, 35 U.S.C. § 102(b). On summary judgment, it was held that contested facts prevented the grant of summary judgment based on the on-sale bar. See ConAgra II, 2003 WL 21222266 at *5. The on-sale bar defense, however, was not presented to the jury. See Instructions at 34-39 (affirmative defense instructions). In its Rule 50 motion, defendant raises the on-sale bar, contending that the evidence at trial included additional evidence that eliminated the primary factual dispute that precluded summary judgment.[7] However, on a Rule 50 motion,

---

[7] Defendant ignores that the denial of summary judgment was not limited to a factual issue as to the amount of ascorbic acid in the Sara Lee bread formula. There were also factual issues as to the amount of yeast food and vinegar in the bread formula, as well as whether any potassium bromate was being used. See ConAgra II, 2003 WL 21222266 at *5.

judgment as a matter of law cannot be granted based on an issue that was not presented to the jury during the trial. See Atchley v. Nordam Group, Inc., 180 F.3d 1143, 1150 (10th Cir. 1999). Also, defendant did not raise the on-sale bar issue in its Rule 50(a) motion at the close of evidence. See Oct. 12, 2004 Transcript at 778-80. Therefore, it cannot raise the issue in its posttrial Rule 50(b) motion. See Pierson v. Hartley, 391 F.3d 898, 902 (7th Cir. 2004). The on-sale bar will not be considered.

For the foregoing reasons, defendant is not entitled to judgment as a matter of law granting a declaratory judgment that the '355 patent is invalid. Plaintiff has failed to prove the patent was infringed. Defendant did not indisputedly prove that the patent is invalid.

IT IS THEREFORE ORDERED that defendant's motion for judgment under Fed. R. Civ. P. 50 that the patent is invalid and is not infringed [176] is granted in part and denied in part. Plaintiff's motions for entry of permanent injunction [160], attorney fees [161], and prejudgment interest [162] are denied. The judgment dated October 13, 2004 and entered on October 18, 2004 [154] is vacated. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice. The Clerk of the Court is further directed to enter judgment in favor of counterdefendant and against counterplaintiff dismissing the

counterclaim with prejudice. Each party shall bear its own costs.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

DATED: APRIL 28, 2005